SUMMA CORPORATION, DBA DESERT INN, APPELLANT, *v.* STATE GAMING CONTROL BOARD AND NEVADA GAMING COMMISSION, RESPONDENTS.

No. 13312

August 27, 1982                    649 P.2d 1363

*Lionel Sawyer & Collins,* and *Robert D. Faiss,* Las Vegas, for Appellant.

*Richard H. Bryan,* Attorney General; *Patricia Becker,* Chief Deputy Attorney General, Gaming Division, and *Dennis V. Gallagher,* Deputy Attorney General, Carson City, for Respondents.

## OPINION

*Per Curiam:*

Summa Corporation, dba Desert Inn, appeals from the partial summary judgment granted to the State Gaming Control Board and the Nevada Gaming Commission.

In June 1979 Summa filed a complaint for declaratory relief

pursuant to NRS 30.040 and 463.343, seeking a declaration as to the meaning of NRS 463.0114 and 463.370.

NRS 463.0114, which determines the measure of gross revenue of casino licensees, provides:

"Gross revenue" means the total of all sums received as winnings less only the total of all sums paid out as losses by a licensee under a state gaming license during a calendar quarter.

NRS 463.370 requires the Commission to charge and collect a quarterly license fee based on a percentage of the licensee's assessed gross revenue.

The Commission adopted Regulation 6.080, establishing a method of computing gross revenue. It provides that an unpaid gaming credit instrument, or "marker," may be excluded by the licensee in determining gross revenue. That regulation sets out criteria by which a credit instrument is presumed to be for gaming purposes.[1] The state has claimed authority under this regulation to include unpaid "irregular" markers, those taken in violation of the licensee's internal control systems[2] or agency regulation, in its assessment of gross revenue. An audit by the Board for the period 1974-1978 prompted this action, when Summa was informed by the Board that the audit resulted in an assessment which included the face amount of certain unpaid markers deemed "irregular." The district court, in granting partial summary judgment to the state, upheld Regulation

---

[1]Regulation 6.080(2) provides in part:

Treatment of credit instruments in determining gross gaming revenue shall be as follows:

(a) Any marker, IOU, check, hold check, returned check, or other similar credit instrument evidencing the granting of gaming credit to a patron (hereinafter referred to as "gaming credit instrument") may be excluded by the licensee in determining gross gaming revenue. Any credit instrument taken for purposes other than gaming credit shall not be so excluded.

(1) A credit instrument not in excess of $2,500 taken at the cage shall be presumed to be a gaming credit instrument.

(2) A credit instrument in excess of $2,500 taken at the cage shall not be presumed to be a gaming credit instrument unless the licensee shall have specifically provided for the handling of such items in systems of internal control submitted pursuant to Reg. 6.050. The presumptions of subparagraphs (1) and (2) herein are rebuttable.

(3) Any other credit instrument taken in accordance with Reg. 6.260 or the systems of internal control submitted pursuant to Reg. 6.050 shall be a gaming credit instrument.

[2]Reg. 6.050 requires each licensee to establish a plan for administrative and accounting internal control systems.

6.080. The court, determined that irregular markers may be included in the determination of gross revenue if the licensee fails to rebut the presumption that the markers were issued for non-gaming purposes, *i.e.*, taken in violation of gaming regulations or the licensee's internal control systems.

Regulation 6.080 serves to implement NRS 463.0114 and 463.370. The regulation provides an accounting mechanism by which to determine gross revenue. The authority of the Gaming Commission to enact implementing regulations consistent with the Gaming Control Act is well established. *See* NRS 463.145; State v. Rosenthal, 93 Nev. 36, 559 P.2d 830 (1977).

As the district court found, Regulation 6.080 has remained unchallenged for years and the Commission's action has remained unchanged by subsequent legislative action. Where, as here, the legislature has had ample time to amend an administrative agency's reasonable interpretation of a statute, but fails to do so, such acquiescence indicates the interpretation is consistent with legislative intent. Sierra Pacific Power Co. v. Department of Taxation, 96 Nev. 295, 607 P.2d 1147 (1980).

We affirm the decision of the trial court granting partial summary judgment to respondents.