ROBERT E., A MINOR, PETITIONER, *v.* JUSTICE COURT OF RENO TOWNSHIP, COUNTY OF WASHOE, STATE OF NEVADA, RESPONDENT.

No. 14324

June 9, 1983                                          664 P.2d 957

*David Parraguirre,* Public Defender, and *Scott Jordan,* Deputy Public Defender, Washoe County, for Petitioner.

*Mills Lane,* District Attorney, and *Edward Dannan,* Assistant District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, MANOUKIAN, C. J.:

This petition requires us to determine the legislative intent

regarding the 1977 amendment of NRS 62.080. Determining that NRS 62.080, as amended, is ambiguous, we hold that consistent with reason and public policy the legislature intended that certification under NRS 62.080 terminates juvenile court jurisdiction only as to the specific offense alleged and considered by the court at the certification hearing. Consequently, absent a clear expression by the legislature to the contrary, NRS 62.080 requires recertification of a juvenile for each and every independent offense. Accordingly, the writ of prohibition shall issue.

On February 19, 1982, the petitioner was certified, pursuant to NRS 62.080, by the juvenile division of a district court (juvenile division) to face adult criminal proceedings on charges of burglary, grand larceny and possession of stolen property. At that time, petitioner was sixteen years old. Petitioner pleaded guilty on March 10, 1982, to one count of burglary and was released from custody on his own recognizance pending sentencing. On May 13, 1982, petitioner was sentenced to three years in the Nevada State Prison.

Several hours after petitioner's release on March 10, 1982, a residence in Lemmon Valley was burglarized. On March 11, 1982, petitioner confessed to the Lemmon Valley burglary and was arrested and charged, by way of criminal complaint, with burglary and possession of stolen property. Although petitioner was still sixteen years old, he was not certified, pursuant to NRS 62.080, by the juvenile division to face adult criminal proceedings on the second burlary. Instead, he was booked at Washoe County Jail and arraigned as an adult. There is no contention that the two burglaries are, in any manner, part of the same criminal transaction.

Following the lower court's denial of his petition for writ of habeas corpus, petitioner requested this court, on September 23, 1982, to issue a writ of mandamus or prohibition. Respondent was ordered to answer after our determination that petitioner had set forth arguable issues and that he may have no plain, speedy and adequate remedy in the ordinary course of the law.

Acting as juvenile courts, the district courts of this state have exclusive, original jurisdiction in proceedings over any juvenile living or found within the county who is neglected, in need of supervision or has committed a delinquent act. NRS 62.040. A child sixteen years of age or older may not be tried as an adult in a criminal proceeding in the district court unless, after a full investigation, the juvenile division in the exercise of its sound discretion determines that the juvenile should be certified for proper criminal proceedings to the court which would have

trial jurisdiction of such offense if committed by an adult. NRS 62.080. In 1977, the legislature amended NRS 62.080 by adding the following provision:

> After such a child has been certified for proper criminal proceedings and his case has been transferred out of the juvenile division, original jurisdiction of the person rests with the court to which the child has been certified and the child may thereafter petition for transfer back to the juvenile division only upon a showing of exceptional circumstances.

1977 Nev. Stats. ch. 531 § 6.

The respondent contends that the legislative history of this amendment and the language of the statute itself plainly indicate that, once a juvenile is certified as amenable to criminal proceedings in district court, the juvenile does not need to be recertified to be tried as an adult on any subsequent independent criminal charges. Petitioner argues that denial of recertification hearings on subsequent criminal charges would violate due process of law under Kent v. United States, 383 U.S. 541 (1966) and urges this court to adopt the "general rule" and interpret NRS 62.080 as requiring recertification hearings.[1]

When presented with a question of statutory interpretation, the intent of the legislature is the controlling factor and, if the statute under consideration is clear on its face, a court can not go beyond the statute in determining legislative intent. White v. Warden, 96 Nev. 634, 636, 614 P.2d 536, 537 (1980). If, however, the statute is ambiguous it can be construed "in line with what reason and public policy would indicate the legislature intended." Cannon v. Taylor, 87 Nev. 285, 288, 486 P.2d 493, 495 (1971), *adhered to, withdrawn in part,* 88 Nev. 89, 493 P.2d 1313 (1972). *See generally* White, *supra.* "A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." Madison Met. Sewer Dist. v. Dep't of Nat. Res., 216 N.W.2d 533, 535 (Wis. 1974). Because NRS 62.080 refers to transfer of the juvenile's *case* out of the juvenile division, the statute can be reasonably interpreted as permitting relinquishment of the juvenile division's jurisdiction over the child for the sole purpose of dealing with the specific alleged violation pending in court. *Cf.* Martin v. State, 94 Nev. 687, 585

---

[1]This court upheld, in Lewis v. State, 86 Nev. 889, 478 P.2d 168 (1970), the constitutionality of NRS 62.080 against charges that the statute constituted an unlawful delegation of legislative power by applying the standards enunciated in *Kent.*

P.2d 1346 (1978) (district court has jurisdiction to rule on juvenile's petition for transfer back to the juvenile division of the *charges* which resulted in certification). On the other hand, respondent's interpretation that, once certified, jurisdiction over the *juvenile* remains with the district court for all future crimes, absent exceptional circumstances, is reasonably supported by language in NRS 62.080 which states that after certification "original jurisdiction of the *person* rests with the court to which the *child* had been certified. . . ." Thus, NRS 62.080 is ambiguous respecting retention of jurisdiction by the district court over a previously certified juvenile.

The legislative history with which respondent buttresses its argument consists of several statements made by Mr. Carmen, the Director of Clark County Juvenile Court Services, during Assembly and Senate Judiciary Committee hearings on A.B. 476 (1977 Nev. Stats. ch. 531). Mr. Carmen testified that "once a juvenile had been certified up as an adult, they [sic] would remain certified for all subsequent actions unless a showing of exceptional circumstances was made." Although respondent claims that this legislative history is "entitled to substantial weight and deference" by this court, the authorities state that "testimony before a committee is of little value in ascertaining legislative intent, at least where the committee fails to prepare and distribute a report incorporating the substance of the testimony." Seward Marine Services, Inc. v. Anderson, 643 P.2d 493, 497 n. 8 (Alaska 1982). *Accord* Thompson v. IDS Life Insurance Co., 549 P.2d 510 (Or. 1976); 2A Sands, *Sutherland on Statutory Construction* § 48.10 (3d ed. 1974). In the present case, the respondent has made no showing that Mr. Carmen's testimony was endorsed or relied on by the committees. Although Mr. Carmen's study of A.B. 476 was attached to the Assembly Judiciary Committee's minutes as an exhibit, it would be extremely speculative to impute Mr. Carmen's beliefs and opinions to the legislature as a whole.[2] Thus, we are left with "reason and public policy" to aid in interpreting NRS. 62.080.[3]

---

[2]Incidentally, Mr. Carmen's proposed language for the amendment of NRS 62.080 was rejected. Mr. Carmen suggested that NRS 62.080 be amended to read: "In matters of criminal justification, once so certified, original jurisdiction of that person will rest with the adult court and then [sic] may petition the court to be processed as a juvenile."

[3]The cases relied on by petitioner do not establish a "general rule" favoring recertification for each new criminal act by a juvenile. All of those decisions were resolved by statutory interpretation. The authorities cited, however, do allow recertification in the face of statutes which seem

This court has recently emphasized the legitimacy of public safety issues in certification proceedings under NRS 62.080. In the Matter of Seven Minors, 99 Nev. 427, 664 P.2d 947 (1983). Nevertheless, the certification analysis set forth in *Seven Minors* "need not by any means dilute the strength of educative and rehabilitative measures properly taken by the juvenile courts in attempting to socialize and civilize errant youth. Guidance, understanding and care still have the same place in juvenile court proceedings." In the Matter of Seven Minors, *supra.*

Permanent certification of a juvenile to the adult court system under NRS 62.080 would subvert the carefully formulated "decisional matrix" in *In the Matter of Seven Minors.* Of the three considerations enumerated therein only the "persistency and seriousness of past adjudicated or admitted criminal offenses" remains static. Respondent's interpretation of NRS 62.080 would preclude the juvenile offender from establishing that the subsequent charges before the court were *not* of a serious nature or that some of the subjective factors such as age, maturity, character and family relationships and control had *improved* since the last certification decision. Although *Seven Minors* limits the weight to be given subjective factors in a transfer decision, the opinion clearly states that personal considerations may support a decision *not* to transfer in close cases in which neither the seriousness of the alleged offense nor the juvenile's criminal history impels transfer to adult court. Additionally, *Seven Minors* suggests that each transfer decision must be based solely upon the nature of the alleged charges presently before the juvenile court. We have stated that "[o]nce in a given case transfer is decided upon [the public interest] basis, the youth is no longer presumed to be a child in the eyes of the law and no longer entitled to the grace provided by the Juvenile Court Act, *in that particular case.*" In the Matter of Seven Minors, *supra.*

---

to permanently return a juvenile to the jurisdiction of adult courts following the initial certification. In E. H. N. v. Willis, 350 So.2d 829 (Fla.Dist.Ct.App. 1977), a Florida state statute which provided that, after entry of an order waiving juvenile court jurisdiction, "thereafter the child shall be subject to the jurisdiction of the appropriate court as if the child were an adult," was interpreted to require recertification of the juvenile on every new criminal charge. The Florida court stated that the juvenile court's waiver of jurisdiction was for the sole purpose of dealing with the specific alleged violation pending in the court. *Id.* at 831. In State v. Dinkins, 627 P.2d 523 (Utah 1981), a Utah statute which provided that following certification "the jurisdiction of the juvenile court is terminated as to the child or person concerned," was interpreted to waive the juvenile court's jurisdiction only "to the specific offense alleged and considered by the court at the waiver hearing." *Id.* at 524-525. *See generally* Benge v. Commonwealth, 346 S.W.2d 311 (Ky. 1961).

The legislature has directed that the Juvenile Court Act shall be "liberally construed to the end that each child coming within the jurisdiction of the court shall receive such care, guidance and control . . . as will be conducive to the child's welfare and the best interests of the state. . . ." NRS 62.031. This statement coupled with the importance in the transfer decision of the nature of the alleged offense and the possibility of subjective factors weighing against a transfer decision suggest that a juvenile charged with a crime subsequent to and independent of the initial certification proceeding should have an opportunity to establish changed circumstances in any of the categories enumerated in *In the Matter of Seven Minors*. Therefore, reason and public policy dictate that certification to an adult court under NRS 62.080 affects only the specific offenses alleged and considered by the juvenile division at the transfer proceeding. Thus, a juvenile must be recertified by the juvenile division under NRS 62.080 on each and every subsequent and independent criminal charge.[4]

Accordingly, we hereby order that petitioner's writ of prohibition be granted, and suspend all criminal proceedings in the respondent court brought against petitioner by way of the criminal complaint filed on March 11, 1982, without prejudice as to the Washoe County District Attorney's commencement of a certification hearing in the juvenile division as provided herein to determine the petitioner's amenability to criminal proceedings in district court on the charges brought against him subsequent to his certification hearing on February 19, 1982.

SPRINGER, MOWBRAY, STEFFEN, and GUNDERSON, JJ., concur.

---

[4]The Utah Supreme Court ruled on an identical issue in State v. Dinkins, 627 P.2d 523 (Utah 1981). There, the court noted that: "[r]ecertification hearings could take into account the record of prior proceedings. The court need not hear the same evidence elicited before, but could consider whether new circumstances persuade the court that the juvenile may at that time benefit from treatment in the juvenile system without jeopardizing the safety of the public." Dinkins, 627 P.2d at 524. We approve of the Utah Supreme Court's statement concerning recertification hearings. Such a procedure would minimize the burden on juvenile courts and would insure that each alleged juvenile offender is afforded an opportunity to litigate any relevant changed circumstances.