MARIA A. CABLE; TIMOTHY CRISTILLI; JEANETTE M. DISERIO; THERESA J. HARVEY; FRANCES A. HUNTER; HENRY J. JAMES; TIMOTHY JONES; KARE KLOEPFER; SHARON KODAK; WILLIAM C. MITCHELL; WILLIAM A. MULHOLLAND; MONICA C. PIKE; CHRISTINE A. ROMERO; ROBERT ANDRES; BARBARA M. ARNAL; IRENE ARTZ; EVE BUCK-INGHAM; LUISA CARPENELLI; JANICE DOERING; CHERYL FLEMING-WOLFE; MERL FULLENWIDER; MARK GANGESTAD; SUSAN HAAS; NANCY JENNINGS; DAVID JOHNSON; AUDREY KLATKIEWICZ; SUSAN LARMOUTH; SUSAN MEYER; JOHN P. MORGAN; ROGER MOWBRAY; VICTORIA PIERCE; LAWRENCE A. PRESTON; LAELA PULLIN; KRISTINE M. REBER; RAEANN REINKE; GAYLE M. SHERMAN; ARTHUR C. THURNER; BERTHA DON THURSTON; DIANE P. TIERNEY; AND JENNIFER M. WATTLES, NKA JENNIFER CHRISTIANSEN, APPELLANTS, v. THE STATE OF NEVADA EX REL. ITS EMPLOYERS INSURANCE COMPANY OF NEVADA, ITS GENERAL MANAGER, DOUGLAS D. DIRKS, IN HIS OFFICIAL CAPACITY; EMPLOYERS INSURANCE COMPANY OF NEVADA, A PRIVATE CORPORATION, ITS CHIEF EXECUTIVE OFFICER, DOUGLAS D. DIRKS, IN HIS OFFICIAL CAPACITY; ITS BOARD OF DIRECTORS RICHARD W. BLAKEY, M.D., ROBERT J. KOLESAR, KATHERINE WON ONG, PHILLIP C. PECKMAN, SAMUEL J. ROUTSON, MICHAEL D. RUMBOLZ, AND SHARON K. ZADRA, IN THEIR OFFICIAL CAPACITIES, RESPONDENTS.

No. 43402

February 9, 2006                    127 P.3d 528

[Rehearing denied March 10, 2006]

*McCracken Stemerman Bowen & Holsberry* and *W. David Hols-berry, Andrew J. Kahn*, and *Richard G. McCracken*, Las Vegas, for Appellants.

*George Chanos*, Attorney General, and *Daniel Wong*, Chief Solicitor General, Carson City, for Respondent State of Nevada.

*Lemons Grundy & Eisenberg* and *Alice G. Campos Mercado*, Reno, for Respondents Employers Insurance Company of Nevada and its officers and directors.

## OPINION

By the Court, DOUGLAS, J.:

In this appeal from a district court order granting summary judgment, we consider whether the privatization of the state's industrial insurance system made its former employees eligible for a statutory buyout of retirement service credit. We conclude that appellants, all former employees of the State Industrial Insurance System (SIIS), were entitled to a retirement service credit purchase under NRS Chapter 286, since they were terminated from state employ upon the privatization of SIIS, if they were eligible to retire at full or reduced benefits.

### FACTS AND PROCEDURAL HISTORY

In 1999, the Nevada Legislature enacted Senate Bill 37, a bill that called for the privatization of the State Industrial Insurance System (SIIS).[1] On January 1, 2000, upon proclamation by the Governor, SIIS became a private mutual insurance company, Employers Insurance Company of Nevada (EICON). When SIIS' as-

---

[1] 1999 Nev. Stat., ch. 388, at 1756-1844.

sets were transferred to EICON, EICON expressly assumed "all debts and liabilities, known and unknown," of SIIS.[2] All persons who were employed by SIIS on December 31, 1999, automatically became employees of EICON on January 1, 2000. As EICON employees they were no longer in state employ or eligible for service credits under Nevada's Public Employees' Retirement System (PERS).[3]

EICON also assumed control of SIIS operations; thus, specifically, under section 138 of SB 37 those SIIS employees, as of the date of transfer to EICON, were deemed "terminated" from state employ, and therefore, entitled to the benefits and privileges of terminated state employees under NRS Chapter 286.[4] Additionally, the bill provided certain EICON workers with a special benefit if EICON experienced layoffs during the first year and a half of its existence. Under section 134 of SB 37, EICON was required to pay the full cost of up to five years' worth of service credits for any workers who could thereby be made eligible for full benefits retirement, if those employees agreed to retire.[5]

On December 29, 1999, fourteen of the appellants filed a complaint against EICON and the State of Nevada, SIIS, arguing that, because in three days they would be terminated from their SIIS jobs, they were entitled to participate in a separate, but similar, NRS Chapter 286 buyout program that requires a state agency to subsidize the purchase of retirement service credits for certain employees who are terminated.[6] The district court ordered joinder of all similarly situated employees as plaintiffs. The parties crafted a notice that was sent to all who had been employed by SIIS for at least five years, instructing them to file a Notice of Appearance if they chose to be joined in the action. Thirty more former SIIS employees joined the action, bringing the total number of plaintiffs to forty-four.

The State of Nevada moved to dismiss the action against it for failure to state a claim because the state agency named was no longer in existence and had been statutorily replaced by EICON, which had assumed all SIIS' debts and liabilities. The district court initially denied the State's motion to dismiss, but later, upon reconsideration, the court granted the dismissal with prejudice.

Thereafter, both EICON and the plaintiffs filed motions for summary judgment. The district court determined that there "were no real disagreements over the facts of th[e] case." The court

---

[2]*Id.* § 129(2)(b)(1), at 1839.

[3]*Id.* § 138, at 1842.

[4]*Id.* § 138(2), at 1842.

[5]*Id.* § 134, at 1841.

[6]NRS 286.3007.

framed the legal issue as how to define the phrase "eligible for retirement." To answer that question, the district court compared language from NRS 286.510[7] to language from SB 37. Ultimately, the district court granted EICON's summary judgment motion, concluding that the Legislature did not intend for employees such as the plaintiffs to be able to take advantage of the employee-reduction buyout provided in section 134 of SB 37. The district court's order did not address the applicability of the NRS Chapter 286 buyout program to employees such as the plaintiffs.

Appellants appeal the district court's order granting summary judgment in favor of EICON, challenging as well the dismissal of the claims against the State of Nevada.

## DISCUSSION

This court's review of a district court order granting summary judgment is de novo.[8] Likewise, we review de novo a district court's statutory interpretation.[9]

Appellants contend that the district court erred in basing its ruling on the language of SB 37's buyout program. Appellants argue that their claims were brought instead under NRS Chapter 286, which requires any state agency reducing the number of its employees to offer employees who are "eligible to retire" a subsidized buyout of service credits. Appellants further argue that under SB 37, they were "terminated" from state employ and that this termination equals a reduction in work force for the purposes of NRS Chapter 286, thus making them eligible to participate in the statutory buyout program.

Respondents argue that appellants were not eligible for the NRS Chapter 286 buyout provision, since their employment continued and the state agency they previously worked for no longer exists. Respondents further argue that appellants were not "eligible to retire" under that provision, since they could not retire at full unreduced benefits, even with the purchase of up to five years of service credit.

"[W]hen a statute is clear and unambiguous on its face, a court may not go beyond the language of the statute in determining the legislature's intent."[10] However, "[w]hen a statute is ambiguous,

[7]NRS 286.510 defines retirement eligibility for members of PERS.

[8]*Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 110, 825 P.2d 588, 591 (1992).

[9]*State, Div. of Insurance v. State Farm*, 116 Nev. 290, 293, 995 P.2d 482, 484 (2000).

[10]*Roberts v. State of Nevada*, 104 Nev. 33, 37, 752 P.2d 221, 223 (1988).

'the plain meaning rule has no application,' and the statute can be construed 'in line with what reason and public policy would indicate the legislature intended.' "[11]

This court presumes that the Legislature, when enacting statutes, is aware of other similar statutes.[12] Therefore, we can presume that the Legislature, when enacting SB 37, was aware of the buyout provision of NRS Chapter 286, which has been in effect since 1985. There is no indication that the Legislature sought to replace or repeal that provision when enacting SB 37. Thus, in considering appellants' arguments, the district court should have determined whether they are entitled to proceed under the NRS Chapter 286 buyout provision, as asserted. The NRS Chapter 286 buyout provision is located at NRS 286.3007, which reads in pertinent part:

> 3. If a state agency is required to reduce the number of its employees, it shall purchase credit for service pursuant to NRS 286.300 for any member who:
> (a) Is eligible to purchase credit;
> (b) Is eligible to retire or will be made eligible by the purchase of the credit;
> (c) Agrees to retire upon completion of the purchase; and
> (d) Has been employed by the agency for 5 or more years.
> 4. If a state agency is required to purchase credit pursuant to subsection 3, it shall pay 5 percent of the cost of purchasing the credit and an additional 5 percent of the cost for each year that the person has been employed by the agency in excess of the minimum requirement of 5 years.

The pertinent issue here is whether NRS 286.3007 applies to appellants, who were transferred from public to private employment. In particular, we must determine whether the privatization of SIIS constituted a reduction in force under NRS 286.3007(3). If so, we must then determine if appellants are entitled to the benefit of that provision, based on the definition of "eligible to retire" as used in NRS 286.3007(3)(b).

The language of NRS 286.3007(3) applies to those whose jobs are "reduced" by a state agency. In *SNEA v. State, Employment Security Department*, this court held that NRS 286.3007(3) obligated the state to purchase service credit for any eligible employee who was subject to a state agency's reduction-in-force termina-

---

[11]*Id.* (quoting *McKay v. Bd. of Supervisors*, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986)).

[12]*State Farm*, 116 Nev. at 295, 995 P.2d at 486.

tion.[13] Under the plain language of SB 37, section 138, all EICON employees were "terminated" from state employ for the purposes of NRS Chapter 286. Although none of the appellants ultimately lost jobs, they did lose their *state* jobs; SIIS did in fact "reduce the number of its employees." Therefore, we conclude that NRS 286.3007(3) is an NRS Chapter 286 right or privilege to which appellants, if eligible, are entitled under the terms of SB 37.

Respondents argue that even if appellants were terminated for *the purposes of NRS 286.3007(3)*, appellants do not meet the "eligible to retire" criteria of NRS 286.3007(3)(b), since they are not eligible to retire at full benefits. Respondents urge this court to determine that, as provided for under subsection 1 of NRS 286.510, retirement "eligibility" includes only those who are able to retire with full benefits.[14] Respondents further contend that NRS 286.510(6), which discusses retirement with reduced benefits, does not define retirement eligibility but rather defines an alternative by which an employee may retire if not eligible under subsection 1.[15]

Appellants contend that the statute should be read in its entirety and that the subsections simply describe different circumstances under which workers are eligible to retire. They point to interpretations by the Attorney General, the Legislative Counsel Bureau (LCB), and PERS, which all interpret "eligible to retire" under NRS 286.3007 as retiring with either full or reduced benefits. We agree.

First, we point out that subsections of a statute will be read together to determine the meaning of that statute.[16] Further, the statutory interpretation of a coordinate governmental branch or an agency that is authorized to execute that statute, unless it conflicts with the constitution or other statutes, exceeds the agency's powers, or is otherwise arbitrary and capricious, is entitled to deference.[17]

---

[13]107 Nev. 622, 623, 817 P.2d 708, 709 (1991).

[14]NRS 286.510(1) reads in pertinent part: "[A] member of the System is eligible to retire at age 65 if he has at least 5 years of service, at age 60 if he has at least 10 years of service and at any age if he has at least 30 years of service."

[15]NRS 286.510(6) reads in pertinent part: "Any member who has the years of creditable service necessary to retire but has not attained the required age, if any, may retire at any age with a benefit actuarially reduced to the required retirement age."

[16]*Diamond v. Swick*, 117 Nev. 671, 676, 28 P.3d 1087, 1090 (2001).

[17]*Meridian Gold Co. v. State*, 119 Nev. 630, 635, 81 P.3d 516, 519 (2003).

Finally, as pointed out in the Attorney General's opinion noted by appellants, "[i]n statutes other than NRS 286.3007, the Legislature has used clearly distinguishing language when it desired to restrict retirement eligibility to the unreduced age for service retirement."[18] For example, the Attorney General noted that the word "unreduced" was used to distinguish between the types of retirement in SB 37, section 134. It was then suggested that, because it should be presumed that "the Legislature did not use a superfluous word in section 134 of SB 37 when it referred to an unreduced service retirement,"[19] the absence of such word in NRS 286.3007(3) is indicative of the Legislature's intent that such retirement types should not be distinguished under that statute.

In addition, we recognize that the LCB has noted that "PERS has historically and consistently interpreted the phrase 'eligible to retire' as used in subsection 3 of NRS 286.3007 to include a member who may retire with a reduced benefit pursuant to subsection 6 of NRS 286.510,"[20] without legislative interference.[21]

Finally, as noted by the Attorney General and the LCB, other jurisdictions have accepted that construction of pension statutes should be construed in favor of pension recipients.[22]

We agree with the analyses of the Attorney General and the LCB, as they are consistent with generally recognized rules of statutory construction. Accordingly, we hold that the buyout provision of NRS 286.3007(3)(b) applies to former SIIS employees who are eligible to retire at either full or reduced benefits, and the district court erred in granting summary judgment to EICON.

In summary, SB 37 privatized SIIS, effective January 1, 2000. Under that measure, respondent EICON received assets and assumed the debts and liabilities of the former SIIS. In the event of forced layoffs, section 134 of SB 37 requires EICON to pay the full actuarial cost to purchase up to five years of PERS service credit for transferred employees who would be made eligible for full retirement benefits by the purchase and who agree to retire upon completion of the purchase. Section 134 of SB 37 has no application to employees, like appellants, who are only eligible to retire based upon reduced benefits for early retirement under NRS

[18]99-40 Op. Att'y Gen. 225, 227 (1999).

[19]*Id.* at 228-29.

[20]Letter from Legislative Counsel to Assemblywoman Bonnie Parnell 3 (Dec. 2, 1999).

[21]*Summa Corp. v. State Gaming Control Bd.*, 98 Nev. 390, 392, 649 P.2d 1363, 1365 (1982) (finding that failure by the Legislature to amend a statute after an agency interpretation demonstrates acquiescence to that interpretation).

[22]The Attorney General cited *Automobile, Etc. v. Department of Retirement*, 598 P.2d 379, 381 (Wash. 1979); the LCB cited, among other cases, *O'Connor v. State Teachers' Retirement Sys.*, 51 Cal. Rptr. 2d 540 (Ct. App. 1996).

286.510(6). SB 37 does not interfere with applications of NRS 286.3007 to younger employees. As noted, NRS 286.3007(3) and (4) require state agencies to *partially* fund purchase of service credit for younger members who become the subject of a reduction in force.

As we conclude, these appellants are entitled to claim that the abolition of SIIS as a state agency constitutes a reduction in force. Accordingly, because section 138 of SB 37 requires EICON to assume all SIIS liabilities, EICON must partially fund purchase of service credit for appellants under NRS 286.3007(3) and (4). Thus, we further conclude that the district court properly dismissed the State of Nevada from this action.

Our dissenting colleagues argue that we have applied section 134 of SB 37 to ineligible former employees. Our decision today does nothing of the kind. While we agree with the dissent that full payment of purchase credit under SB 37 is not required for employees such as the appellants in this case, we conclude that partial payment for such credit is mandated under NRS 286.3007. This interpretation is entirely consistent with the testimony of Mr. Gagnier, Executive Director of the State of Nevada Employees Association, in aid of the passage of SB 37.

## CONCLUSION

NRS 286.3007(3) applies to any appellant meeting the statutory eligibility criteria, whether they will retire at full or reduced benefit levels, and any service credit purchase must be funded by EICON. The district court order granting summary judgment on behalf of EICON is reversed, and we remand this matter to the district court for proceedings consistent with this opinion.

ROSE, C. J., MAUPIN and BECKER, JJ., concur.

HARDESTY, J., with whom GIBBONS and PARRAGUIRRE, JJ., agree, concurring in part and dissenting in part:

Although I concur with the majority that the State was properly dismissed, I dissent from the majority's extension of retirement credit purchases to former State Industrial Insurance System (SIIS) employees with reduced benefits. In 1999, our Legislature made a policy decision to privatize SIIS into the Employer's Insurance Company of Nevada (EICON). To do so, the Legislature adopted SB 37, which established the legal framework for abolishing this state agency.

Concerned with the privatization's impact on state employees, the Legislature created a number of protections for SIIS workers who changed jobs by the privatization or who chose not to accept employment with EICON. These protections included priority re-

hiring from the state reemployment list, extended time for remaining on the reemployment list, and a lifting of the then-existing state hiring freeze for SIIS employees who had difficulty obtaining other employment.

The Legislature also provided a benefit to employees joining EICON who were close to retirement and wanted to retire early. Section 134(1) of SB 37 required EICON to purchase credit for not more than 5 years of service for employees who would be made eligible to receive an *unreduced* service retirement allowance pursuant to Chapter 286 of NRS. In this, the Legislature was advised that this benefit would extend to the approximately 150 SIIS employees who were eligible for retirement under NRS 286.510(1).

Today, in derogation of the Legislature's plan to privatize SIIS and the express provisions in section 134(1) of SB 37, the majority extends the purchase of retirement credits to former SIIS employees with either full or *reduced* benefits. Respectfully, I must dissent.

The majority claims that the district court should have determined whether appellants could proceed under the buyout provisions contained in NRS 286.3007. But NRS 286.3007 does not apply to this case for three reasons. First, privatizing SIIS did not invoke the reduction-in-force provision in NRS 286.3007(3). Second, appellants do not satisfy the other requirements of NRS 286.3007(3) to qualify for benefits. And third, the majority's interpretation of NRS 286.3007(3)(b) contradicts the Legislature's express intent in adopting SB 37, section 134(1).

First, the majority acknowledges that even under NRS 286.3007(3), a reduction in force must be found before there is any obligation for the state to purchase service credits. NRS 286.3007(3) provides that "[i]f a state agency is required to reduce the number of its employees, it shall purchase credit for service pursuant to NRS 286.300." Without recognizing the existence of an ambiguity in the term "reduce" or determining the legislative history or intent with respect to that word, the majority summarily concludes that a reduction in force occurred when SIIS was privatized. However, the privatization of a state agency is not the same as a reduction in force under NRS 286.3007(3).

If a statute is clear on its face, a court cannot go beyond the statute in determining legislative intent.[1] However, a statute, or portion of a statute, is ambiguous when it is " 'capable of being understood by reasonably well-informed persons in either of two or more senses.' "[2] When a statutory provision is ambiguous, this

---

[1] *White v. Warden*, 96 Nev. 634, 636, 614 P.2d 536, 537 (1980).

[2] *Robert E. v. Justice Court*, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983) (quoting *Madison Met. Sewer Dist. v. Department of Nat. Res.*, 216 N.W.2d 533, 535 (Wis. 1974)).

court should look to the Legislature's intent.[3] Legislative intent can be determined by examining the legislative history of the statute in question.[4] Additionally, "a court may examine the context and spirit of the statute in question, together with the subject matter and policy involved."[5]

The term "reduce" in NRS 286.3007(3) is not clear on its face. Reasonably well-informed persons can understand the term "reduce" to mean a complete extinction of the work force or, simply, a reduction of the work force when the state agency continues to be a part of state government. Thus, because the term "reduce" in NRS 286.3007(3) is ambiguous, this court may look to the Legislature's intent to determine its meaning.

An examination of the legislative history of NRS 286.3007(3) shows that the Legislature did not intend NRS 286.3007(3) to apply when it completely closes a state agency. The purpose of this provision was to aid in expediting the early retirement of older, higher paid employees when budget issues arose.[6] Mr. Bible, the Director of the Department of Administration, stated that the provision was intended to create some guidelines when a state agency was forced to reduce its work force. He explained that NRS 286.3007(3) applied "in the case where you had budget reductions and you wanted to retire some of the older, higher-paid employees. You could in effect . . . use this as a device to encourage retirement, by having the state buy some prior service credit."[7]

The legislative history demonstrates that NRS 286.3007(3) applies in the context of a state agency facing budget shortages but not going out of business. The spirit of the provision is to reduce payroll liabilities through early retirement of longer-term employees without having to cut jobs. Utilizing well-established rules of statutory interpretation compels the conclusion that NRS 286.3007(3) applies to situations in which a state agency reduces its work force but remains in business, not as here, when the state closes the agency altogether.

Second, the majority has overlooked the fact that appellants cannot satisfy the other requirements set forth in NRS 286.3007(3) to obtain benefits. In *SNEA v. State, Employment Security Department*, this court made clear that the benefits provided under NRS 286.3007(3) are narrowly tailored to the employee who is the sub-

---

[3]*Metz v. Metz*, 120 Nev. 786, 792, 101 P.3d 779, 783 (2004).

[4]*Attorney General v. Board of Regents*, 114 Nev. 388, 394, 956 P.2d 770, 774 (1998).

[5]*Metz*, 120 Nev. at 792, 101 P.3d at 783.

[6]Hearing on S.B. 447 Before the Senate Comm. on Finance, 63d Leg. (Nev., May 10, 1985).

[7]*Id.* at 2.

ject of a reduction in force and *agrees to retire* upon completion of the purchase.[8] Nothing in the record shows that appellants agreed to retire upon purchase of the benefits. To the contrary, they were provided with opportunities to obtain other state jobs or continue employment with EICON.

Third, and finally, the majority's application of NRS 286.3007(3)(b) to this case contradicts the Legislature's express intention to deal with the purchase of service credits as part of the overall plan to privatize SIIS. SB 37, section 134(1)(a) sets forth the circumstances under which EICON would be required to purchase service credits on behalf of its employees who were previously employed with SIIS. These select employees would be eligible if, among other things, EICON reduced the number of its employees and the terminated employee was eligible to receive an *unreduced* service retirement allowance.[9] Robert Gagnier, Executive Director of the State of Nevada Employees Association (SNEA), testified before the legislative committees considering the privatization of SIIS that the retirement benefit offered under SB 37 was different—and better—than the purchase of retirement credits offered under NRS 286.3007. This testimony shows that even SNEA did not interpret NRS 286.3007 in the manner reached by the majority. At no time did Mr. Gagnier suggest that SIIS employees would be entitled to the purchase of retirement service credits if they were not eligible to retire at unreduced benefits. To the contrary, Mr. Gagnier acknowledged on behalf of SNEA, which included appellants, that retirement eligibility under SB 37 extended to individuals who "would either have to be 60 years old or older, or have 25 or more years of service"[10] under NRS 286.510(1).

Ignoring the express provisions of SB 37, the majority concludes that the purchase of service credits applies to employees with either full or *reduced* benefits. Nothing in the legislative history or in the record before the district court supports this conclusion. As the district court found, "[I]t was not the intent of the legislature to require purchase of retirement service credit for all employees whether or not they were eligible for 'unreduced' or 'reduced' retirement coverage eligibility pursuant to NRS 286.510." I would affirm the district court's summary judgment in favor of EICON and the State.

---

[8]107 Nev. 622, 624, 817 P.2d 708, 709 (1991); NRS 286.3007(3)(c).

[9]*See* 1999 Nev. Stat., ch. 388, § 134, at 1841.

[10]Hearing on S.B. 37 Before the Assembly Comm. on Commerce and Labor, 70th Leg. (Nev., May 10, 1999). Although Mr. Gagnier testified that individuals would have to have 25 years or more of service, the statute has always required 30 years.