131 Nev., Advance Opinion 57

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DOUBLE DIAMOND RANCH MASTER
ASSOCIATION, A NEVADA
NONPROFIT CORPORATION,
Petitioner,
vs.
THE SECOND JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
WASHOE; AND THE HONORABLE
SCOTT N. FREEMAN, DISTRICT
JUDGE,
Respondents,
and
THE CITY OF RENO, NEVADA,
Real Party in Interest.

No. 65666

**FILED**

JUL 3 0 2015



Original petition for a writ of mandamus or prohibition challenging a district court order denying a motion to dismiss in a contract action.

*Petition denied.*

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Don Springmeyer, John M. Samberg, and Christopher W. Mixson, Reno,
for Petitioner.

Karl S. Hall, City Attorney, and Susan Ball Rothe, Deputy City Attorney, Reno,
for Real Party in Interest.

BEFORE THE COURT EN BANC.

15-22992

## OPINION

By the Court, HARDESTY, C.J.:

NRS 116.3105(2) permits a homeowners' association that provides at least 90 days' notice to terminate "any contract . . . that is not in good faith or was unconscionable to the units' owners at the time entered into." In this writ petition, we address whether the 90 days' notice operates as a statute of limitations or a notice for the recipient to commence litigation. We conclude that NRS 116.3105(2) does not act as a statute of limitations, and a recipient of an association's notice of termination of a contract is not required to take legal action within the 90-day time frame. Accordingly, we deny this petition.

## FACTS

In 1996, Kreg Rowe, the developer of petitioner Double Diamond Ranch Master Association (the Association) entered into a Maintenance and Operation Agreement (Maintenance Agreement) with the City of Reno. Because the property was in a flood zone, the Federal Emergency Management Agency required the developer to obtain a Letter of Map Revision and enter into the Maintenance Agreement prior to developing the South Meadows and Double Diamond Ranch homes in Reno, Nevada. The Maintenance Agreement requires, among other obligations, that the Association maintain certain flood control channels, provide rock rip-rap protection in the Double Diamond/South Meadows area, and file an annual report.

In February 2012, the Association gave notice to the City that it was terminating the contract pursuant to NRS 116.3105(2). This statute permits homeowners' associations to terminate at any time a

contract that was entered into by a declarant[1] if the contract was (1) unconscionable to the units' owners at the time entered into, and (2) the association provides 90 days' notice to the recipient. NRS 116.3105(2). In its notice, the Association claimed that it should not have been a party to the Maintenance Agreement because Mr. Rowe signed the agreement on the Association's behalf one day before the Association legally came into being. Further, the Association claimed that Mr. Rowe entered into the Maintenance Agreement for his own benefit, in order to "develop the adjacent property as he desired." Finally, the Association claimed that the City never sought to enforce the Maintenance Agreement and only learned about its existence recently. Later that month, the City rejected the Association's notice of termination.

In October 2013, the City brought an action against the Association seeking specific performance of the Maintenance Agreement. The Association moved to dismiss the complaint for failure to state a claim for relief and failure to join indispensable parties. More specifically, the Association argued that the contract was invalid as the Association had statutorily terminated the Maintenance Agreement 20 months before. The Association also contended that it did not own the property at issue,

---

[1]A declarant is the real estate developer of a property who has control of a homeowners' association until a certain percentage of homes are sold and the homeowners can elect the association's first board of directors. *See* NRS 116.035(1) (defining a "declarant" as "any person or group of persons acting in concert who . . . [a]s part of a common promotional plan, offers to dispose of the interest of the person or group of persons in a unit not previously disposed of"); NRS 116.31032 (detailing the period of declarant's control of an association); NRS 116.31034 (describing the election process for the executive board of an association).

and other indispensable parties were necessary, such as the land owner and Mr. Rowe, the developer.

At the hearing on the motion, the Association argued that the statute required the recipient of the notice of contract termination to file suit within 90 days. More specifically, the Association argued that the burden shifted to the recipient to bring a cause of action within that time if it questioned an association's claim of unconscionability or lack of good faith. The district court ultimately denied the Association's motion to dismiss. The court determined that there were several genuine issues of material fact; for example, whether the Association, including the property owners, benefited from the Maintenance Agreement and whether the parties' agreement was unconscionable. Further, the court stated that the statute provided no guidance as to when a recipient must pursue legal action, and instead, the City's letter rejecting the Association's notice of termination provided enough notice to the Association "that a justiciable controversy may exist as a result." Thereafter, the Association petitioned this court for a writ of mandamus or prohibition directing the district court to vacate its order denying the Association's motion to dismiss and to order dismissal instead.

## DISCUSSION

The Association petitions this court for a writ of mandamus compelling the district court to vacate the court's order denying its motion to dismiss.[2] "A writ of mandamus is available to compel the performance

---

[2]Alternatively, the Association seeks a writ of prohibition. A writ of prohibition is appropriate when a district court acts without or in excess of its jurisdiction. NRS 34.320; *Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev., Adv. Op. 21, 276 P.3d 246, 249 (2012); *see also Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 679, 818 P.2d

*continued on next page...*

of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *see* NRS 34.160; *see also Humphries v. Eighth Judicial Dist. Court*, 129 Nev., Adv. Op. 85, 312 P.3d 484, 486 (2013). Generally, this court "decline[s] to consider writ petitions that challenge interlocutory district court orders denying motions to dismiss" because an appeal from a final judgment is an adequate legal remedy. *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 558. However, even when an adequate and speedy remedy exists, this court may exercise its discretion when an important issue of law needs clarification and sound judicial economy warrants intervention. *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008).

While the Association has an adequate legal remedy, whether the 90-day notice period within NRS 116.3105(2) operates as a statute of limitations is an important issue of law in need of clarification, and resolving this issue at this stage of the proceedings would promote judicial economy. Accordingly, we exercise our discretion to consider the Association's petition.

*The 90-day notice period in NRS 116.3105(2) is not a statute of limitations*

The Association argues that the statute requires the recipient of a notice of contract termination under NRS 116.3105(2) to take legal action within 90 days, otherwise the 90-day language is superfluous. The

---

*...continued*

849, 851, 853 (1991). Because the district court had jurisdiction to conduct and determine the outcome of the motion hearing, we deny the Association's alternative request for a writ of prohibition and consider this petition under the mandamus standard.

SUPREME COURT
OF
NEVADA

(O) 1947A

Association further argues that the 90-day notice shifts the burden to the recipient to commence an action. We disagree.

Pursuant to NRS 116.3105, a homeowners' association may terminate contracts or leases entered into by declarants after giving 90 days' notice. NRS 116.3105(1) permits associations to terminate contracts within two years of an executive board's election by its units' owners. In addition, NRS 116.3105(2) permits associations to terminate contracts at any time if the declarant did not enter into the contract in good faith or the contract was unconscionable to the units' owners at the time of contract formation. The Association argues that the statute requires the recipient of the notice to file legal action within the 90-day period. Interpreting whether NRS 116.3105(2)'s 90-day notice period operates as a statute of limitations is an issue of first impression and a question of law that we review de novo.[3] *See Int'l Game Tech.*, 124 Nev. at 198, 179 P.3d at 559 ("Statutory interpretation is a question of law that we review de novo, even in the context of a writ petition.").

This court has concluded that when a statute is facially clear, it will give effect to the statute's plain meaning. *D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 123 Nev. 468, 476, 168 P.3d 731, 737 (2007). Where a statute is ambiguous, because it is susceptible to more than one reasonable interpretation, this court will consider reason and public policy to determine legislative intent. *Cable v. State ex rel. Emp'rs Ins. Co. of Nev.*, 122 Nev. 120, 124-25, 127 P.3d 528, 531 (2006). In addition, this

---

[3]Moreover, while several other states have adopted the Uniform Common Interest Ownership Act that Nevada adopted in 1991, no other state court has interpreted whether the statute requires a notice recipient to pursue legal action within the 90-day notice period.

court assumes that when enacting a statute, the Legislature is aware of related statutes. *Id.* at 125, 127 P.3d at 531.

NRS 116.3105(2) states in full as follows:

> The association may terminate without penalty, at any time after the executive board elected by the units' owners pursuant to NRS 116.31034 takes office upon not less than 90 days' notice to the other party, any contract or lease that is not in good faith or was unconscionable to the units' owners at the time entered into.

The statute does not expressly indicate what rights and obligations a recipient has when it receives an association's notice of termination of a contract. On the one hand, the 90 days' notice could indicate the time frame a party has to pursue legal action; on the other hand, the 90 days' notice could merely indicate the period the association must continue to perform under the contract before termination. Accordingly, we conclude that NRS 116.3105(2) is ambiguous, and we therefore look to the intent of the Legislature and to related statutes.

When interpreting an ambiguous statute to determine the Legislature's intent, this court will look to the legislative history of the statute in light of the overall statutory scheme. *See We the People Nev. v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1171 (2008). In addition, "'[t]he [L]egislature is presumed to have intended a logical result, rather than an absurd or unreasonable one.'" *Clark Cnty. Sch. Dist. v. Clark Cnty. Classroom Teachers Ass'n*, 115 Nev. 98, 103, 977 P.2d 1008, 1011 (1999) (quoting *Angoff v. M & M Mgmt. Corp.*, 897 S.W.2d 649, 654 (Mo. Ct. App. 1995)).

When the Legislature codified NRS Chapter 116, it modeled the chapter on the Uniform Common Interest Ownership Act (UCIOA). *See, e.g.*, Hearing on A.B. 221 Before the Assembly Judiciary Comm., 66th

Leg. (Nev., March 20, 1991); Hearing on A.B. 221 Before the Senate Judiciary Comm., 66th Leg. (Nev., May 23, 1991). Nevada did not amend any of the UCIOA language in the section of the bill that became NRS 116.3105(2), and thus, the statute mirrors section 3-105 of the UCIOA. *See* Hearing on A.B. 221 Before the Assembly Judiciary Comm., 66th Leg., Exhibit C (Nev., April 17, 1991) (indicating no changes to the section of the bill that became NRS 116.3105(2)). *Compare* NRS 116.3105(2), *with* Unif. Common Interest Ownership Act § 3-105(b) (2008), 7 U.L.A. 349 (2009). Testimony from one of the committee hearings on Assembly Bill 221 indicated that "association management and consumer protection were the two most common threads throughout the bill." Hearing on A.B. 221 Before the Assembly Judiciary Comm., 66th Leg. (Nev., February 20, 1991) (testimony of Stephen Hartman). Further, the UCIOA offered purchaser protections, including the "power of an association to terminate 'sweetheart' contracts entered into by the developer." *Id.*, Exhibit C (prepared testimony by Michael Buckley).

Similarly, commentary to the UCIOA reflects that the purpose behind this law was to address the "common problem in the development of . . . planned community . . . projects: the temptation on the part of the developer, while in control of the association" to engage in self-dealing contracts. Unif. Common Interest Ownership Act § 3-105 cmt. 1, 7 U.L.A. 349. Thus, this law allows an association to terminate any contract that is not bona fide or is unconscionable: "certain contracts . . . [are] so critical to the operation of the common interest community and to the unit owners' full enjoyment of their rights of ownership that they . . . should be voidable by the unit owners." *Id.* at § 3-105 cmt. 2, 7 U.L.A. 349.

SUPREME COURT
OF
NEVADA

(O) 1947A

The Restatement (Third) of Property also permits a similar termination of a contract entered into by a developer that is not bona fide or is unconscionable to the members, and also recognizes the conflicting interests of the declarant and the association.[4] Restatement (Third) of Prop.: Servitudes § 6.19 (2000). "The developer's primary interest is in completing and selling the project, while that of the purchasers is in maintaining their property values and establishing the quality of life they expected when buying the property." *Id.* at § 6.19 cmt. a. Recognizing that an association's "members have little opportunity to protect themselves" while the association is under the control of the developer, this rule permits associations to treat certain contracts as voidable. *Id.* at § 6.19 cmt. d. However, neither the UCIOA nor the Restatement speaks to whether a recipient can challenge the termination notice and when a recipient of a termination notice must file an action against the association.

Thus, interpreting the statute as a statute of limitations as the Association suggests would require us to read additional language into the statute, which we decline to do.[5] *See McKay v. Bd. of Cnty. Comm'rs,*

---

[4]In the Restatement (Third) of Property: Servitudes § 6.19(3)(d) (2000):

> After the developer has relinquished control of the association to the members, the association has the power to terminate without penalty . . . any contract or lease that is not bona fide, or was unconscionable to the members other than the developer at the time it was entered into, under the circumstances then prevailing.

[5]We disagree with the Association's argument that the 90-day language in the statute would be superfluous if it were not acting as a

*continued on next page...*

Supreme Court
of
Nevada

(O) 1947A

103 Nev. 490, 492, 746 P.2d 124, 125 (1987) (explaining that when a statute is silent, "it is not the business of this court to fill in alleged legislative omissions based on conjecture as to what the [L]egislature would or should have done").

Moreover, this court has identified three purposes for which statutes of limitations are intended to operate:

> First, there is an evidentiary purpose. The desire is to reduce the likelihood of error or fraud that may occur when evaluating factual matters occurring many years before. Memories fade, witnesses disappear, and evidence may be lost. Second, there is a desire to assure a potential defendant that he will not be liable under the law for an indefinite period of time. Third, there is a desire to discourage prospective claimants from "sleeping on their rights."

*State Indus. Ins. Sys. v. Jesch*, 101 Nev. 690, 694, 709 P.2d 172, 175 (1985).

Considering these purposes here, the evidentiary purpose is moot since the statute permits an association to terminate contracts "at any time." NRS 116.3105(2). Because an association can terminate a contract at any time, time passage, fading memories, disappearing witnesses, and lost evidence are seemingly less important than preserving an association's right to terminate.

The second and third purposes would be incongruent with the customary statute of limitations for contracts (either four or six years depending on if the contract is in writing). *See* NRS 11.190(1)(b) and

---

...*continued*
statute of limitations. The 90-day period appears to provide time for a notice recipient to make preparations for termination of the contract.

(2)(c).[6] While a potential defendant should not have to worry about liability after a certain period of time, as described above, we determine that the customary statute of limitations for contracts found in NRS 11.190 should apply, as reducing the four-year or six-year limit to 90 days, while allowing an association to terminate a contract at any time, appears unequal. Similarly, the "desire to discourage prospective claimants from sleeping on their rights" and permitting a 90-day limitations period but allowing the association to terminate *at any time* essentially permits an association to "sleep on [its] rights" while one-sidedly denying a notice recipient the typical period of limitation. *Jesch*, 101 Nev. at 694, 709 P.2d at 175 (internal quotations omitted).

Thus, we conclude that neither the statute's plain language nor legislative history shows that the Legislature intended for the 90 days' notice requirement in NRS 116.3105(2) to act as a statute of limitations for a notice recipient to commence litigation. Rather, upon notice from an association, the notice recipient would then have the customary period of limitations for contracts under NRS 11.190 in which to commence an action.[7]

---

[6]Under NRS 11.190(1)(b) and (2)(c), "actions . . . may only be commenced . . . [w]ithin 6 years . . . [on a]n action upon a contract, obligation or liability founded upon an instrument in writing" or "[w]ithin 4 years . . . [on a]n action upon a contract, obligation or liability not founded upon an instrument in writing."

[7]In the same way that NRS 116.3105(2)'s 90-day requirement does not operate as a statute of limitations for a notice recipient, nothing in the plain language of the statute imposes a duty on the notice provider to file an action within the 90-day period in response to a denial of the contract termination notice.

Because we conclude that the 90-day notice period in NRS 116.3105(2) does not operate as a statute of limitations or shift the burden to a notice recipient to file an action, we conclude that the district court did not err in denying the Association's motion to dismiss, and we deny this petition.

_____, C.J.
Hardesty

We concur:

_____ J.
Parraguirre

_____, J.
Douglas

_____, J.
Saitta

_____, J.
Gibbons

PICKERING, J., with whom CHERRY, J., agrees, concurring:

I agree with the majority's decision to deny the petition for a writ of mandamus or prohibition but would do so on the basis that this challenge to the district court's order denying the petitioner's motion to dismiss does not qualify for extraordinary writ relief. At best, the petition asserts legal error by the district court in not crediting the petitioner's argument that, under NRS 116.3105, the City of Reno had 90 days to sue, once the Double Diamond Ranch Master Association (HOA) gave notice it was terminating the parties' contract as "not bona fide" or "unconscionable." This termination provision, or one like it, has been part of the Uniform Common Interest Ownership Act (UCIOA) since 1982. *Compare* UCIOA § 3-105(b) (2008), 7 U.L.A., part 1B 349 (2009), *with* UCIOA § 3-105 (1982), 7 U.L.A., part 2 107 (2009). Yet, as the majority acknowledges, no court, including our Nevada district courts, has read this termination provision as petitioner does. It is more natural to read the provision as the district court did: after a notice of termination under NRS 116.3105, an HOA-terminable contract remains in force for at least 90 days. Such a contract is prospectively voidable but not void, in other words.

Mandamus does not lie to correct a district court's legal error in denying a motion to dismiss for failure to state a claim upon which relief can be granted. *State ex rel. Dep't of Transp. v. Thompson*, 99 Nev. 358, 361-62, 662 P.2d 1338, 1340 (1983); *see Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW) v. Nat'l Caucus of Labor Comms.*, 525 F.2d 323, 326 (2d Cir. 1975) ("It is not the function of mandamus to allow *ad hoc* appellate review of interlocutory orders when only error is alleged."). Such an error, if one occurs, is correctable by the

district court as the case proceeds and by this court on direct appeal from the eventual final judgment. *See Reno Hilton Resort Corp. v. Verderber*, 121 Nev. 1, 5-6, 106 P.3d 134, 136-37 (2005) (emphasizing that the final judgment rule, which withholds appellate review until final judgment is reached in the district court, plays "a crucial part of an efficient justice system": "[f]or the trial court, it inhibits interference from the appellate court during the course of preliminary and trial proceedings, and for the appellate court, it prevents an increased caseload and permits the court to review the matter with the benefit of a complete record"). Also, mandamus "requires not only a clear error but one that unless immediately corrected will wreak irreparable harm." *In re Linee Aeree Italiane (Alitalia)*, 469 F.3d 638, 640 (7th Cir. 2006); *see* NRS 34.170 (allowing for mandamus in cases "where there is not a plain, speedy and adequate remedy in the ordinary course of law"). "[B]ecause an appeal from the final judgment typically constitutes an adequate and speedy legal remedy, we generally decline to consider writ petitions that challenge interlocutory district court orders denying motions to dismiss." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008).

This petition, as filed, met none of the conventional criteria for extraordinary writ relief. It asserts legal error in the denial of a motion to dismiss. But the error not only was not "clear," as mandamus relief requires; it was, as the majority concludes, nonexistent. Nor did the petitioner establish that an eventual appeal would not afford an adequate legal remedy. The only harm alleged was the expense associated with the HOA having to defend itself in district court. But this harm inheres in any order denying a motion to dismiss and, by itself, is not enough to

justify writ relief. "Postponing appeal to the end of a litigation, rather than interrupting it *in medias res* with a mandamus proceeding that would require this court to conduct interlocutory appellate review, is as likely to reduce as to increase the total expense of the litigation." *In re Linee Aeree Italiane*, 469 F.3d at 640.

I recognize that, in *International Game Technology*, we deemed advisory or supervisory mandamus permissible when needed to resolve "an important issue of law [that] needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." 124 Nev. at 197-98, 179 P.3d at 559. Such use of extraordinary writ review provides a needed "escape hatch" from the finality rule, which ordinarily defers appellate review until final judgment is reached in the district court, and the strict limitations conventionally imposed on extraordinary writ relief. *Cf. Am. Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 282 (2d Cir. 1967). "Even so, proper occasions for employing advisory mandamus are hen's-teeth rare: it is reserved for blockbuster issues, not merely interesting ones." *In re Bushkin Assocs., Inc.*, 864 F.2d 241, 247 (1st Cir. 1989). These limitations need to be observed, or the narrow exception to the rules governing extraordinary writ relief set forth in *International Game Technology* will overrun the final judgment rule.

I respectfully disagree with my colleagues in the majority that petitioner's argument with respect to the UCIOA termination provision codified as NRS 116.3105 presents the kind of "important issue of law need[ing] clarification" that would qualify a case for advisory mandamus. To me, the fact that the provision has existed for more than 30 years without any court or commentator reading it as the petitioner presses us

to do should have led us to summarily deny the petition so the case could proceed in district court. Instead, once this court ordered an answer and full briefing, the parties voluntarily suspended all proceedings in the district court, halting its forward progress. I submit that we should have denied the petition as procedurally insufficient, without reaching the merits. I therefore concur, but only in the result.

_____, J.
Pickering

I concur:

_____, J.
Cherry