THE MERIDIAN GOLD COMPANY, APPELLANT, v. THE STATE OF NEVADA EX REL. DEPARTMENT OF TAXATION; NEVADA TAX COMMISSION; COUNTY OF NYE; AND COUNTY OF MINERAL, RESPONDENTS.

No. 39596

December 30, 2003                    81 P.3d 516

*Paul D. Bancroft,* Incline Village, for Appellant.

*Brian Sandoval,* Attorney General, and *Joshua J. Hicks,* Deputy Attorney General, Carson City, for Respondents Department of Taxation and Nevada Tax Commission.

*Cheri K. Emm,* District Attorney, and *Paul G. Yohey,* Deputy District Attorney, Mineral County, for Respondent Mineral County.

*Robert S. Beckett,* District Attorney, and *Peter L. Knight* and *Marla Zlotek,* Deputy District Attorneys, Nye County, for Respondent Nye County.

---

[80]THE HONORABLE MYRON E. LEAVITT, Justice, did not participate in the decision of this matter.

Before the Court EN BANC.[1]

## OPINION

By the Court, GIBBONS, J.:

This is an appeal from a judgment of the district court affirming a Nevada Department of Taxation tax deficiency determination. The Nevada Tax Commission originally granted appellant Meridian Gold Company's application to use an accelerated depreciation schedule based on Meridian's assertion that it was closing its mine. The Commission later revoked the accelerated depreciation grant because Meridian continued to produce gold through cyanide heap leaching after the closure date. The Commission assessed Meridian $860,628.57 in taxes because Meridian failed to terminate its mining operations. Meridian argues that the district court erred in affirming the Commission's decision to uphold the tax deficiency. To resolve this issue, we must analyze the meaning of a "mining operation" under NAC 362.160, which requires mining operators using accelerated depreciation schedules to pay additional taxes if they do not cease their mining operations.

We conclude that the plain meaning of the phrase "mining operation" includes extracting precious metals from earth. Thus,

---

[1]The Honorable Archie E. Blake, Judge of the Third Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE MYRON E. LEAVITT, Justice. Nev. Const. art. 6, § 4.

cyanide heap leaching is a mining operation, and the district court did not err in affirming the requirement that Meridian pay additional taxes.

## FACTS

Meridian is a mining company that operated Paradise Peak Mine. On March 7, 1991, Meridian applied for accelerated depreciation of its assets under NAC 362.100 to 362.160, which allow mining operators to accelerate their assets' depreciation if mining operations cease. On several occasions, Meridian represented to the Commission that it would close the mine in mid-1993. Based on Meridian's representations, the Commission granted Meridian accelerated depreciation of all its leasehold improvements and fixed equipment over a three-year period from 1990 to 1993.

In 1993, Meridian laid off most of its mine employees and shut down its mill. However, from mid-1993 until 1995, Meridian produced 45,000 or 47,000 ounces of gold through heap leach pads at the site. Discovering that Meridian continued to extract gold after mid-1993, when Meridian reported that the mine would close, the Commission imposed additional taxes, penalties, and interest on Meridian. The total assessed tax was $1,257,993.75.[2]

Meridian appealed the Commission's decision through the tax agency. After considering the evidence and conducting a hearing, the hearing officer decided in the Commission's favor and upheld the tax imposition. The Commission eventually waived the interest and penalties. Then Meridian unsuccessfully appealed the hearing officer's decision and ultimately filed a petition for judicial review.

The district court remanded the case to the Commission to determine the definition of "mine closure" under NAC 362.160. The Commission responded as follows:

> Mine closure for purposes of the accelerated depreciation contemplated in NAC 362.160 is the cessation of operations of the mine. Cessation of operations contemplates no further production of minerals through operation, reduction, beneficiation or any other treatment used by the mine operator . . . . The production and reporting of any amount of gold (minerals) after the stated date of mine closure is inconsistent with the cessation of operation of a mine.

The Commission also stated that the definition was to apply only to Meridian and not to any other taxpayer. The district court adopted the Commission's definition and upheld the deficiency tax.

---

[2]The base tax was $860,628.57 with a penalty of $58,849.31 and interest of $338,515.87.

## DISCUSSION

Meridian's main argument on appeal is that the Commission's decision to revoke the accelerated depreciation schedule was arbitrary and capricious. When we review an administrative decision, we must " 'review the evidence presented to the agency in order to determine whether the agency's decision was arbitrary or capricious and was thus an abuse of the agency's discretion.' "[3] An abuse of discretion occurs when the decision is not supported by substantial evidence.[4] "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.' "[5]

### Mine closure

Meridian argues that NAC 362.100 to 362.160 should be construed in Meridian's favor because they contain no definition for "mine closure." According to Meridian, it understood "mine closure" not to include cyanide heap leaching for purposes of receiving accelerated depreciation.

No specific definition of "mining operations" or "mine closure" exists in NAC 362.100 to 362.160. " 'The construction of a statute is a question of law subject to de novo review.' "[6] We have stated that "words in a statute will generally be given their plain meaning, unless such a reading violates the spirit of the act, and when a statute is clear on its face, courts may not go beyond the statute's language to consider legislative intent."[7] We have further held that "we must construe statutory language to avoid absurd or unreasonable results."[8] Rules of statutory construction apply to administrative regulations.[9]

NAC 362.160 states in part that

---

[3]*Secretary of State v. Tretiak,* 117 Nev. 299, 305, 22 P.3d 1134, 1137-38 (2001) (quoting *Clements v. Airport Authority,* 111 Nev. 717, 721, 896 P.2d 458, 460 (1995)).

[4]*Tighe v. Las Vegas Metro. Police Dep't,* 110 Nev. 632, 634, 877 P.2d 1032, 1034 (1994).

[5]*Id.* (quoting *State, Emp. Security v. Hilton Hotels,* 102 Nev. 606, 608, 729 P.2d 497, 498 (1986)).

[6]*California Commercial v. Amedeo Vegas I,* 119 Nev. 143, 145, 67 P.3d 328, 330 (2003) (quoting *County of Clark v. Upchurch,* 114 Nev. 749, 753, 961 P.2d 754, 757 (1998)).

[7]*Pellegrini v. State,* 117 Nev. 860, 873-74, 34 P.3d 519, 528 (2001).

[8]*Id.* at 874, 34 P.3d at 528.

[9]*Miller's Pond Co. v. Rocque,* 802 A.2d 184, 190 n.7 (Conn. App. Ct. 2002); *U.S. Outdoor Advertising Co. v. Indiana D.O.T.,* 714 N.E.2d 1244, 1256 (Ind. Ct. App. 1999).

> [i]f a mining operator who has been allowed to depreciate as-
> sets using the accelerated method fails to cease *operations* on
> the date of closure specified in the notice required by NAC
> 362.100 or at any time reopens the *mining operation,* he
> shall . . . [p]ay to the department within 30 days after demand
> the difference between the net proceeds taxes using the
> straight-line method of depreciation over a 20-year period
> and the amount paid using the accelerated method for any
> year in which the accelerated method was used.

(Emphases added.) We determine the question to be: what is the
plain meaning of "operations" or "mining operation"?

Mining is "the process or business of working mines."[10] This
definition suggests that if the action performed is part of the
process or business of working mines, it must be a part of mining.
Another definition of mining is "[t]he process or business of ex-
tracting from the earth the precious or valuable metals, either in
their native state or in their ores."[11] Under the definition, extract-
ing gold from earth is mining. The *American Law of Mining* also
considers heap leaching to be mining because it explains the
process under the heading "Basic Mining Technology."[12]

We must understand what heap leaching is to determine whether
it is within the regulation's plain meaning. Cyanide heap leaching
is a method of extracting precious metals from previously ex-
tracted ore. The process involves moving large quantities of ore
onto a huge pad where cyanide placed over the ore removes the
precious metals over a period of time. In the instant case, approx-
imately .03 ounces of gold were within each ton of ore. After al-
most two years and moving about three billion pounds of ore,
Meridian extracted 45,000 or 47,000 ounces of gold. This is the
only process in which Meridian engaged from 1993 to 1995.

Traditional mining involves drilling into the earth and extracting
precious metals. It differs from heap leaching in two significant
ways. First, traditional mining includes digging into the ground and
either stripping the ground of metals or tunneling deep within the
earth. Heap leaching entails moving previously extracted ore.
Second, traditional mining requires drilling machines and explo-
sives, whereas heap leaching utilizes chemicals to remove the pre-
cious metals from the ore. Although still a mining process, heap
leaching does not involve digging, tunneling, or explosives.

We conclude that heap leaching is a mining operation contem-
plated under NAC 362.160. Absent a specific definition, the plain
meaning of "mining operation" must include heap leaching be-

---

[10]*Webster's Ninth New Collegiate Dictionary* 756 (1985).

[11]*Black's Law Dictionary* 898 (5th ed. 1979).

[12]1 *American Law of Mining* § 1.07[6] (The Rocky Mountain Mineral Law
Foundation ed., 2d ed. 2003).

cause (1) heap leaching is a basic mining technology and (2) precious metal is extracted from earth. Additionally, it would be absurd not to consider heap leaching as a "mining operation" because it cannot be anything else but mining. Therefore, the district court properly affirmed the Commission's decision to revoke Meridian's accelerated depreciation schedule for continued mining operations after the specified date of closure.[13]

*Arbitrary and capricious*

Meridian contends that the Commission's decision to revoke its approval of Meridian's application for accelerated depreciation was arbitrary and capricious. We have stated that "[w]hen determining the validity of an administrative regulation, courts generally give 'great deference' to an agency's interpretation of a statute that the agency is charged with enforcing."[14] However, we "will not hesitate to declare a regulation invalid when the regulation violates the constitution, conflicts with existing statutory provisions or exceeds the statutory authority of the agency or is otherwise arbitrary and capricious."[15]

NAC 362.160(2), part of the Commission's regulations, provides that a mine operator who fails to cease operations on the date of closure shall pay the "difference between the net proceeds taxes using the straight-line method of depreciation over a 20-year period and the amount paid using the accelerated method for any year in which the accelerated method was used." Under this language, the Commission may change the depreciation schedule from an accelerated schedule to a twenty-year schedule when the mining operator fails to cease operations. As a standard, the regulations impose a twenty-year depreciation schedule on the entire mining industry.[16] Accelerated depreciation is available only to mining operators that comply with the provisions of NAC 362.100 to 362.160. Those regulations provide many requirements that a mining operator must meet to qualify for accelerated depreciation of its assets. Some of these requirements include filing a petition with the Commission, giving public notice that the mine will close within thirty-six

---

[13]The district court determined that NAC 362.100 to 362.160 contained no definition of "mine closure" and remanded the case to the Commission for a hearing on the proper definition of "mine closure." On December 24, 2001, the Commission defined mine closure. We hold that the district court erred in remanding the case for a hearing since "mining operation" is unambiguous; however, the error was harmless because the Commission defined "mine closure" consistently with "mining operation."

[14]*State, Div. of Insurance v. State Farm,* 116 Nev. 290, 293, 995 P.2d 482, 485 (2000).

[15]*Id.*

[16]NAC 362.040.

months, publishing the notice in the company's annual report, providing copies of those notices to the Commission, filing a copy of a plan with the Commission for productive use of the land after the mining has stopped, and ceasing mining operations on the date of closure specified in the filed notice.

Companies that do not comply with NAC 362.100 to 362.160 remain on the standard twenty-year depreciation schedule. Meridian applied for accelerated depreciation, but failed to comply with the regulations. Specifically, Meridian failed to cease mining operations on the specified date of closure.[17] The Commission then imposed the standard twenty-year depreciation schedule on Meridian. In doing so, the Commission followed its regular practice. Placing Meridian on the same depreciation schedule as the rest of the mining industry was not an arbitrary or capricious act.

*Administrative rulemaking*

Meridian argues that the Commission's twenty-year depreciation schedule is arbitrary and is not authorized by its statutory mandate. Meridian contends that NRS 362.120(3)(g) specifically requires the Commission to consider the probable life of a mine's equipment when calculating depreciation. NRS 362.120(3)(g) states:

> The net proceeds are ascertained and determined by subtracting from the gross yield . . . [d]epreciation of the original capitalized cost of the machinery, equipment, apparatus, works, plants and facilities mentioned in paragraph (e). The annual depreciation charge consists of amortization of the original cost in a manner prescribed by regulation of the Nevada tax commission. The probable life of the property represented by the original cost must be considered in computing the depreciation charge.

The statute authorizes the Commission to prescribe the manner of depreciation by regulation and also states that the probable life of the property must be considered in computing depreciation. The Commission promulgated the twenty-year depreciation schedule that is currently in use and the provisions for accelerated depreciation.

We "will not readily disturb an administrative construction that is within the language of the statute."[18] "Great deference will be afforded to an administrative body's interpretation when it is within the statutory language; moreover, the Legislature's acquiescence in

---

[17]NAC 362.160.

[18]*State ex rel. Tax Comm'n v. Saveway,* 99 Nev. 626, 630, 668 P.2d 291, 294 (1983).

an agency's reasonable interpretation indicates that the interpretation is consistent with legislative intent."[19]

Giving appropriate deference to the Commission's construction of NRS 362.120(3)(g), we conclude that the Commission's depreciation regulations are consistent with the statute's requirement that the Commission consider the property's probable life when calculating depreciation. First, the Commission has assigned different depreciation periods to different types of property and equipment.[20] Second, the regulations provide that the Commission may adjust the allowable depreciation period if the mining company petitions the Commission and demonstrates that the property's expected life is other than that provided in the general depreciation regulation.[21] It thus appears that the Commission does consider the property's expected life in setting the depreciation schedules.

Moreover, the Legislature has acquiesced in the Commission's interpretation because the statute remains unaltered.[22] The regulation Meridian contests has been in effect since 1991.[23] The regulation imposing a twenty-year depreciation schedule on the entire mining industry has been in effect since 1980.[24]

## CONCLUSION

Heap leaching is a mining operation under NAC 362.100 to 362.160. The Commission did not abuse its discretion by revoking Meridian's accelerated depreciation when Meridian violated the provisions of NAC 362.160. We have reviewed all of Meridian's other arguments, and we conclude that they are without merit. Accordingly, we affirm the judgment of the district court.

AGOSTI, C. J., ROSE and BECKER, JJ., and BLAKE, D. J., concur.

SHEARING, J., concurring:

I agree that the Nevada Department of Taxation is correct in determining that the Meridian Gold Company owed additional taxes based on straight-line depreciation rather than the accelerated depreciation originally approved. However, I disagree that the phrase "mining operation" is unambiguous and clearly includes cyanide heap leaching. As the majority acknowledges, traditionally, mining involves digging into the ground and extracting precious metals.

[19]*Id.*

[20]NAC 362.040(1)-(5).

[21]NAC 362.040(8).

[22]*Saveway,* 99 Nev. at 630, 668 P.2d at 294.

[23]NAC 362.160.

[24]NAC 362.040.

Cyanide heap leaching does not involve digging into the ground and extracting precious metals. The material being treated is already above the earth. Meridian closed the mine itself and concluded that its mining operation was completed.

However, considering the fact that the material being leached for precious metals was originally extracted from the mine and was an integral part of the process of gaining the precious metals, the Nevada Department of Taxation reasonably interpreted the heap leaching process to be part of a "mining operation." As the majority indicates, this court will give deference to an administrative body's interpretation when it is within the statutory language.[1] Therefore, the judgment of the district court should be affirmed.

MAUPIN, J., concurring:

The Commission granted Meridian the right to accelerate its depreciation of Paradise Peak Mine leasehold improvements and fixed equipment for state tax purposes based upon a projected mine closure date in mid-1993. In its application for this tax treatment, Meridian repeatedly stressed that exhaustion of ore bodies necessitated the 1993 closure. However, between 1993 and 1995, Meridian continued gold production from previously extracted ore through the cyanide heap leaching process. In my view, that process constituted "mining operations" after the projected closure date; accordingly, Meridian was not entitled to accelerated depreciation based upon closure in mid-1993, and the Commission properly assessed an additional tax based upon straight-line depreciation.[1]