**133 Nev., Advance Opinion 18**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF NEVADA, A PUBLIC AGENCY, A PUBLIC ENTITY AND COMPONENT OF THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>SHAE E. GITTER, AN INDIVIDUAL; AND JARED SHAFER, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF KRISTINE JO FRESHMAN,<br>Respondents. | No. 69208 |



FILED

APR 27 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF NEVADA, A PUBLIC ENTITY AND COMPONENT UNIT OF THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>SHAE E. GITTER, AN INDIVIDUAL; AND JARED SHAFER, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF KRISTINE JO FRESHMAN,<br>Respondents. | No. 69939 |
| W. CHRIS WICKER; AND WOODBURN AND WEDGE,<br>Petitioners,<br>vs.<br>THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE JAMES CROCKETT, DISTRICT JUDGE,<br>Respondents,<br>    and<br>SHAE E. GITTER; AND JARED SHAFER,<br>Real Parties in Interest. | No. 69961 |

 
17-13052

Consolidated appeals from a district court judgment and post-judgment awards of interest, fees, and costs, and an original petition for a writ of mandamus challenging an award of attorney fees. Eighth Judicial District Court, Clark County; James Crockett, Judge.

*Affirmed in part, vacated in part, reversed in part; petition granted; and remanded with instructions.*

Woodburn & Wedge and W. Chris Wicker and Joshua M. Woodbury, Reno, for Public Employees' Retirement System of Nevada, W. Chris Wicker, and Woodburn and Wedge.

Christopher G. Nielsen, Carson City, for Public Employees' Retirement System of Nevada.

Bailey Kennedy and Dennis L. Kennedy, Kelly B. Stout, and Amanda L. Stevens, Las Vegas, for Shae E. Gitter and Jared Shafer, as Special Administrator of the Estate of Kristine Jo Freshman.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, GIBBONS, J.:

In this consolidated matter, we are asked to determine whether (1) Nevada's general slayer statutes apply to the Public Employees' Retirement Act (PERS Act) for the purposes of determining payment of survivor benefits, (2) the Public Employees' Retirement System of Nevada (PERS) is exempted from paying prejudgment or post-judgment interest out of the PERS trust fund, (3) an expert consultant must testify to recover $1,500 or less in costs for that expert under NRS 18.005(5), and (4) attorney fees were appropriate under NRS 7.085 and

18.010. We hold that Nevada's general slayer statutes are applicable to the PERS Act so that any person who kills their PERS-member spouse must be treated as if they predeceased the PERS-member spouse for the purposes of determining payment of survivor benefits. In such a case, the PERS member shall be treated as unmarried at the time of his or her death so that benefits may be paid to a survivor beneficiary. We also hold that PERS is not exempt from paying prejudgment or post-judgment interest, though interest should have been awarded in this case under NRS 17.130. We further hold it is within the district court's discretion to award up to $1,500 in reasonable costs for a nontestifying expert consultant under NRS 18.005(5). Finally, we reverse the award of attorney fees, which we conclude should not have been awarded under NRS 7.085 and 18.010.

## FACTS AND PROCEDURAL HISTORY

Kristine Jo Freshman was employed by the Clark County School District and a member of PERS for 24 years. In 2009, Kristine was killed by her husband, Walter Freshman. Walter pleaded guilty to second-degree murder and was adjudicated a killer as defined by NRS 41B.130 the following year. Before her death, Kristine designated her daughter, Shae E. Gitter, as her survivor beneficiary.

*PERS survivor benefits*

In 2011, Gitter applied to PERS for survivor benefits. PERS denied Gitter's request, indicating the following in its denial letter:

> NRS 286.671 [et seq.] governs [PERS] regarding benefits for survivors. In the case of a member who was married at the time of death, the member's spouse and minor children are the persons eligible to receive benefits.
>
> NRS 286.669 provides that if the spouse is convicted of the murder or voluntary



manslaughter of a member of [PERS], the spouse is ineligible to receive any benefit conferred by any provision of the [PERS Act] by reason of death of that member. Neither this provision, nor any other provision in the [PERS Act], makes any other person eligible to receive such benefit. Based upon the previously mentioned statutes, [PERS] is unable to pay benefits pursuant to your application.

After retaining legal representation, Gitter and respondent Jared Shafer, as special administrator of the Estate of Kristine Jo Freshman (Kristine's Estate or, collectively, Gitter), requested copies of Kristine's PERS records. PERS indicated it was unable to release records to Gitter or Kristine's Estate because neither was entitled to survivor benefits. Ultimately, Gitter petitioned the probate court and obtained a court order instructing PERS to provide copies of Kristine's records.

After PERS produced Kristine's records, Gitter and Kristine's Estate filed suit seeking to collect Gitter's survivor benefits. On Gitter's motion for partial summary judgment, the district court granted Gitter's claim for declaratory relief establishing that NRS Chapter 41B (Nevada's slayer statutes) is applicable to NRS Chapter 286 (the PERS Act). Specifically, the district court found as follows:

NRS Chapter 41B applies to PERS benefits for survivors of a deceased PERS member, including, but not limited to Spousal Benefits and benefits for a survivor beneficiary pursuant to NRS 286.6767.

. . . Pursuant to NRS 41B.310(3), [Walter] is deemed to have predeceased [Kristine] for the purposes of determining entitlement to PERS benefits for survivors as set forth in NRS 286.671-286.679, inclusive.

. . . Pursuant to NRS 41B.310(3), PERS shall treat [Kristine] as being unmarried at the time of

SUPREME COURT
OF
NEVADA

(O) 1947A

4

her death for the purpose of determining entitlement to PERS benefits for survivors.

. . . .

. . . Gitter is entitled to survivor benefits as set forth in NRS 286.6767-286.6769, inclusive.

In light of the district court's summary judgment order, the parties stipulated to the amount of back payments that PERS owed to Gitter: $203,231.76. However, Gitter filed a motion seeking prejudgment and post-judgment interest after PERS asserted it was not permitted to pay interest under the PERS Act. Gitter argued PERS owed prejudgment and post-judgment interest under NRS 99.040(1)(a), NRS 99.040(1)(c), or NRS 17.130. PERS argued it was not obligated to pay interest because interest is not identified as an expense that may be paid from the PERS trust fund pursuant to NRS 286.220(4).

The district court granted Gitter's motion and, in its judgment on the amounts due, ordered PERS to pay interest under NRS 99.040(1)(a). The district court found that in 1986, Kristine and her qualified employer entered into a contract, which "includes eligibility for PERS benefits (including survivor benefits) as part of its compensation package" and "does not fix a rate of interest for any portion of the compensation due thereunder."

*Expert witness fees*

Gitter later filed a memorandum of costs and disbursements, which included $5,000 in expert witness fees as costs for a financial consultant. Gitter provided the district court with the financial consultant's invoice and curriculum vitae. PERS moved to retax costs, challenging the $5,000 in fees paid to a nontestifying expert. The district court found "[i]t was reasonable for Gitter to retain a financial consultant to review amounts calculated by PERS and calculate interest amounts,"

and that the financial consultant was qualified to do so, even though the consultant was not disclosed as an expert witness. Additionally, the district court found that Nevada law was unclear as to whether fees could be recovered in excess of $1,500 for nontestifying experts. Because the consultant was not deposed and did not present any testimony, reports, or affidavits, the district court could not evaluate whether excess costs were appropriate. Thus, the district court granted PERS's motion in part, limiting the expert costs to $1,500 pursuant to NRS 18.005(5).

*Attorney fees*

Gitter also filed a motion for attorney fees pursuant to NRS 7.085 and 18.010, seeking $96,272.50 and arguing that PERS and its counsel repeatedly took unreasonable positions that were unsupported by Nevada law. At a hearing on the motion, PERS and its counsel maintained that its defense was well grounded and based on a reasonable interpretation of the PERS Act. Nonetheless, the district court granted Gitter's motion and ordered PERS and its counsel to pay attorney fees pursuant to NRS 7.085(1)(a) and 18.010(2)(b).

In its order, the district court found that Gitter was entitled to attorney fees because PERS and its counsel acted unreasonably and vexatiously, and maintained a defense without reasonable grounds and not warranted by existing law. The district court also found that in contesting Gitter's entitlement to benefits and interest, "PERS raised numerous arguments that were unsupported by any legal authority, violated established canons of statutory interpretation, and/or were completely devoid of merit." With respect to the reasonableness of the fees, the district court found that the hourly rates charged by the attorneys and paralegals working on Gitter's case were reasonable; the invoices' billing descriptions were of "sufficient detail to assess the

difficulty, intricacy, importance, and skill required to perform each task"; and the number of hours billed was reasonable.

After the district court ordered attorney fees against PERS and its counsel, PERS filed the instant consolidated appeals, and its counsel filed the instant writ petition.

## DISCUSSION

*Nevada's slayer statutes are applicable to the PERS Act*

The parties dispute the applicability of Nevada's general slayer statutes, NRS Chapter 41B, to the PERS Act, NRS Chapter 286. The PERS Act allows a survivor beneficiary to receive payments only "if the member is unmarried on the date of the member's death." NRS 286.6767(1). Otherwise, the payments go to the member's spouse and any minor children. *See* NRS 286.673, 286.674-.67665. Pursuant to the PERS Act slayer statute, however, "[a]ny person convicted of the murder or voluntary manslaughter of a member of [PERS] is ineligible to receive any benefit conferred by any provision of this chapter by reason of the death of that member." NRS 286.669.

Similarly, NRS 41B.200(1) mandates "that a killer cannot profit or benefit from his or her wrong." Pursuant to NRS 41B.310(1), "a killer of a decedent forfeits any appointment, nomination, power, right, property, interest or benefit that, pursuant to the provisions of a governing instrument executed by the decedent or any other person, accrues or devolves to the killer based upon the death of the decedent." Unlike the PERS Act slayer statute, however, NRS 41B.310(3) further provides that "[i]f a killer of a decedent forfeits any appointment, nomination, power, right, property, interest or benefit pursuant to this section, the provisions of each governing instrument affected by the forfeiture must be treated as if the killer had predeceased the decedent."

PERS argues there are no eligible beneficiaries to receive payments of Kristine's contributions. PERS maintains that (1) under NRS 286.6767 it "is prohibited by law from making payments to [Gitter] because [Kristine] was married at the time of her death," and (2) under NRS 286.669, it "is prohibited by law from making payments to [Walter] who was convicted of the murder of [Kristine]." In reaching its conclusion, PERS argues that Nevada's general slayer statutes are incompatible with and cannot be applied to the PERS Act, and that its interpretation of the PERS Act is entitled to deference.

*Standard of review*

PERS challenges the district court's order granting partial summary judgment on Gitter's declaratory relief claim, which ordered that NRS Chapter 41B applies to NRS Chapter 286 so that Walter is treated as predeceasing Kristine, such that Gitter is entitled to survivor benefits. This court reviews a district court's order granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Additionally, "[q]uestions of statutory construction, including the meaning and scope of a statute, are questions of law, which this court reviews de novo." *Davis v. Beling*, 128 Nev. 301, 314, 278 P.3d 501, 510 (2012) (quotation marks omitted).

*Gitter is entitled to PERS survivor benefits because Nevada's slayer statutes are applicable to the PERS Act*

PERS argues that applying Nevada's slayer statutes to the PERS Act would render the provisions of NRS 286.669 meaningless and superfluous. We disagree.

"[W]hen a statute's language is plain and its meaning clear, the courts will apply that plain language." *Leven v. Frey*, 123 Nev. 399, 403, 168 P.3d 712, 715 (2007). Only when a statute is ambiguous will this court "resolve that ambiguity by looking to the statute's legislative history

and construing the statute in a manner that conforms to reason and public policy." *Las Vegas Dev. Assocs., LLC v. Eighth Judicial Dist. Court*, 130 Nev., Adv. Op. 37, 325 P.3d 1259, 1262 (2014) (internal quotation marks omitted). While "statutory interpretation should not render any part of a statute meaningless," a statute "should not be read to produce absurd or unreasonable results." *Leven*, 123 Nev. at 405, 168 P.3d at 716 (internal quotation marks omitted). Accordingly, "whenever possible, a court will interpret a rule or statute in harmony with other rules or statutes." *Watson Rounds, P.C. v. Eighth Judicial Dist. Court*, 131 Nev., Adv. Op. 79, 358 P.3d 228, 232 (2015) (quoting *Nev. Power Co. v. Haggerty*, 115 Nev. 353, 364, 989 P.2d 870, 877 (1999)).

NRS Chapter 41B applies to governing instruments, *see* NRS 41B.310, "[n]otwithstanding any other provision of law," NRS 41B.200(1). Governing instrument is defined to include "[a]ny public or private plan or system that entitles a person to the payment or transfer of any property, interest or benefit, including, without limitation, a plan or system that involves . . . [p]ension benefits, retirement benefits or other similar benefits." NRS 41B.090(9)(a).

Accordingly, we hold that Nevada's slayer statutes are applicable to the PERS Act. PERS is a governing instrument, and the statutory language of NRS 41B.090(9)(a) clearly indicates NRS Chapter 41B applies to the instant matter notwithstanding NRS 286.669. Additionally, reading the statutes together does not render NRS 286.669 meaningless. Rather, we read the statutes in harmony so that Walter receives no benefits under NRS 286.669, but is also treated as if he predeceased Kristine, under NRS 41B.310, for the purpose of determining that Gitter is entitled to survivor beneficiary benefits.

Additionally, PERS argues that the application of NRS 41B.310(3) is directed at the spousal benefit and, thus, provides no basis to award Gitter survivor beneficiary benefits under NRS 286.6767. We disagree.

The provisions of NRS Chapter 41B "do not abrogate or limit the application of . . . [a]ny provision of a governing instrument that designates . . . [a]ny other beneficiary who is not a killer of the decedent." NRS 41B.200(2)(b)(2). Because nothing in NRS Chapter 41B abrogates the rights of a nonkiller, we conclude that Gitter, as an innocent party, has her own rights to claim benefits under the PERS Act.

*Deference to PERS*

PERS argues that its interpretation of the PERS Act is entitled to deference—namely, that NRS 286.6767 allows for benefits to be paid only if the member dies unmarried. We disagree.

While PERS may be granted deference in interpreting the PERS Act, it is not entitled to deference in interpreting other statutes of general applicability like those organized within NRS Chapter 41B. *See, e.g., Meridian Gold Co. v. State ex rel. Dep't of Taxation*, 119 Nev. 630, 635, 81 P.3d 516, 519 (2003) (noting "courts generally give great deference to an agency's interpretation of *a statute that the agency is charged with enforcing*" (emphasis added) (internal quotation marks omitted)). Therefore, we do not defer to PERS in concluding that NRS Chapter 41B applies to the PERS Act.

*Interest should have been awarded under NRS 17.130*

*Standard of review*

The parties next dispute whether and under which statute PERS must pay prejudgment and post-judgment interest. Whether the statutes allowing for prejudgment and post-judgment interest are

applicable here is a question of law that this court reviews de novo. *See Kerala Props., Inc. v. Familian*, 122 Nev. 601, 604, 137 P.3d 1146, 1148 (2006) ("We review an award of prejudgment interest for error."). *Cf. In re Estate & Living Tr. of Miller*, 125 Nev. 550, 553, 216 P.3d 239, 241 (2009) (applying de novo review "when a party's eligibility for a fee award is a matter of statutory interpretation").

*PERS is not exempted from paying interest*

PERS argues the payment of prejudgment and post-judgment interest is neither anticipated by nor permitted under NRS Chapter 286. PERS argues that it has a duty not to pay interest because interest is not identified as an expense that may be paid from the PERS trust fund pursuant to NRS 286.220(4). Additionally, PERS argues that the payment of interest would diminish the fund and adversely affect all PERS members. We disagree with PERS's contention that it does not have to pay interest.

Interest may be awarded where allowed by statute. *Gibellini v. Klindt*, 110 Nev. 1201, 1208, 885 P.2d 540, 544 (1994). Prejudgment and post-judgment interest awards are allowed by the statutes at issue here, NRS 99.040 and 17.130, and PERS points to no statute that prohibits the district court from awarding interest under the circumstances of this case. Therefore, if either of these statutes applies, PERS is obligated to pay prejudgment and post-judgment interest even though the PERS Act does not expressly provide for the payment of interest.

*PERS must pay interest pursuant to NRS 17.130*

PERS argues that NRS 99.040(1)(a) does not apply because Gitter was not a party to any contract, and Gitter's right to benefits can

only be based on statutes. Rather, PERS argues, if interest is appropriate, it should have been awarded under NRS 17.130. We agree.

"When there is no express contract in writing fixing a different rate of interest," NRS 99.040(1)(a) provides for interest in cases "[u]pon contracts, express or implied, other than book accounts." NRS 17.130(2) provides for interest on any judgment "[w]hen no rate of interest is provided by contract or otherwise by law, or specified in the judgment."

The district court erred in concluding that Gitter's survivor benefits constituted money due in a case upon a contract. Pensions are part of an employment contract, *see Pub. Emps.' Ret. Bd. v. Washoe Cty.*, 96 Nev. 718, 722, 615 P.2d 972, 974 (1980), but Gitter has not produced a contract to which she is the intended beneficiary—PERS's obligation to pay survivor benefits is statutory, not contractual, and a designation form identifying a member's intended beneficiaries is not a contract. Thus, we reverse the district court's award of interest under NRS 99.040(1)(a) and remand with instructions for the district court to award interest under NRS 17.130.

*Gitter is entitled to $1,500 in costs for expert fees under NRS 18.005(5)*

*Standard of review*

The parties next dispute the availability of costs for a nontestifying expert consultant under NRS 18.005(5). This court "review[s] an award of costs for an abuse of discretion." *Logan v. Abe*, 131 Nev., Adv. Op. 31, 350 P.3d 1139, 1144 (2015).

*The district court did not abuse its discretion in awarding costs to Gitter for expert fees under NRS 18.005(5)*

PERS argues that the district court abused its discretion in awarding costs under NRS 18.005(5) because Gitter's "expert consultant was never disclosed, never filed a report and never testified." We disagree.

NRS 18.020(3) provides that "[c]osts must be allowed of course to the prevailing party against any adverse party against whom judgment is rendered . . . [i]n an action for the recovery of money or damages, where the plaintiff seeks to recover more than $2,500." Under NRS 18.005(5), costs include "[r]easonable fees of not more than five expert witnesses in an amount of not more than $1,500 for each witness, unless the court allows a larger fee after determining that the circumstances surrounding the expert's testimony were of such necessity as to require the larger fee."

The district court did not abuse its discretion in awarding $1,500 in costs for Gitter's expert consultant. Nevada law establishes that an expert must testify to recover more than $1,500 in expert fees. *See* NRS 18.005(5); *Khoury v. Seastrand*, 132 Nev., Adv. Op. 52, 377 P.3d 81, 95 (2016). However, "NRS 18.005 does not require an expert witness to testify in order to recover fees less than $1,500." *Logan*, 131 Nev., Adv. Op. 31, 350 P.3d at 1144. Additionally, the district court found the fees to be reasonable. Accordingly, the district court's findings are sufficient for this court to affirm its award of costs under NRS 18.005(5).

Nonetheless, we take this opportunity to clarify the law with respect to expert witness fees under NRS 18.005(5). *See Frazier v. Drake*, 131 Nev., Adv. Op. 64, 357 P.3d 365, 374 n.12 (Ct. App. 2015) (noting the seemingly inconsistent caselaw on this issue); *see also Bergmann v. Boyce*, 109 Nev. 670, 680, 856 P.2d 560, 566 (1993) (affirming an award of expert fees below the statutory cap and holding an expert need not be called as a witness as a predicate for such an award); *Mays v. Todaro*, 97 Nev. 195, 199, 626 Nev. 260, 263 (1981) (allowing witness fees "if the witness had been sworn and testified"). Under NRS 18.005(5), an expert witness who does not testify may recover costs equal to or under $1,500, and consistent with *Khoury*, "[w]hen a district court awards expert fees in excess of

$1,500 per expert, it must state the basis for its decision." 132 Nev., Adv. Op. 52, 377 P.3d at 95. With respect to cases in which the expert acts only as a consultant and does not testify, however, district courts may award $1,500 or less, so long as the district court finds such costs constitute "[r]easonable fees." NRS 18.005(5) (emphasis added).

*No attorney fees are warranted under NRS 7.085 or 18.010*

Lastly, PERS appeals the district court's order awarding attorney fees against it under NRS 18.010. Additionally, W. Chris Wicker and Woodburn and Wedge (collectively, petitioners), counsel for PERS, petition this court for a writ of mandamus directing the district court to vacate its order finding PERS's counsel jointly and severally liable for attorney fees under NRS 7.085.

"A writ of mandamus is available to compel the performance of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). Extraordinary relief may be available where there is no "plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170. As petitioners have no other means by which to challenge the district court's order making them jointly and severally liable for more than $95,000 in attorney fees and costs, and as they raise issues warranting our attention, we exercise our discretion to consider their petition. *See Watson Rounds*, 131 Nev., Adv. Op. 79, 358 P.3d at 231 ("Sanctioned attorneys do not have standing to appeal because they are not parties in the underlying action; therefore, extraordinary writs are a proper avenue for attorneys to seek review of sanctions.").

Based on the following, we hold that the district court abused its discretion in awarding attorney fees and costs under NRS 7.085 and 18.010.[1]

*Standard of review*

This court reviews a district court's order awarding attorney fees for an abuse of discretion. *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 80, 319 P.3d 606, 615 (2014).

*The district court abused its discretion by awarding attorney fees under NRS 7.085 and 18.010*

PERS and petitioners argue that the district court improperly awarded attorney fees under NRS 7.085(1) and 18.010(2)(b) because PERS's defense was not frivolous and was based on reasonable interpretations of the PERS Act and NRS Chapter 41B, a novel issue of law. We agree.

NRS 18.010(2)(b) permits a district court to award attorney fees to a prevailing party when the district court determines that a claim or defense of the opposing party was brought or maintained without reasonable grounds or to harass the prevailing party. Under NRS 7.085(1), the district court can hold an attorney personally liable for the attorney fees and costs an opponent incurs when the attorney "[u]nreasonably and vexatiously extend[s] a civil action or proceeding" or "[f]ile[s], maintain[s] or defend[s] a civil action . . . [that] is not well-grounded in fact or is not warranted by existing law or by an argument for

---

[1]Because we reverse the attorney fees award, we need not address whether certain fees were supported by the factors in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 455 P.2d 31 (1969), or were appropriately awarded against petitioners for the time PERS was represented only by the Office of the Attorney General.

changing the existing law that is made in good faith." In the context of an attorney fees award, this court has previously held that "a district court abuses its discretion by making such an award without including in its order sufficient reasoning and findings in support of its ultimate determination." *Watson Rounds*, 131 Nev., Adv. Op. 79, 358 P.3d at 233 (internal quotation marks omitted).

Here, PERS and petitioners should not be subject to attorney fees under NRS 7.085(1) or 18.010(2)(b). From a review of the record and the district court's order, it is not clear that PERS maintained a defense that was "not well-grounded in fact or [was] not warranted by existing law," that petitioners acted "[u]nreasonably and vexatiously," or that the defense imposed was "without reasonable ground." NRS 7.085(1), 18.010(2)(b). Indeed, because PERS's defenses were based upon novel and arguable, if not ultimately successful, issues of law—i.e., whether NRS Chapter 41B applies to the PERS Act and whether PERS can be ordered to pay interest—we conclude that the district court abused its discretion in finding that PERS's arguments "were unsupported by any legal authority, violated established canons of statutory interpretation, and/or were completely devoid of merit" such that its defenses were unreasonable. Accordingly, we grant the petition and reverse the attorney fees awards under NRS 7.085(1) and 18.010(2)(b).

## CONCLUSION

We conclude that NRS Chapter 41B applies to the PERS Act; consequently, Gitter is entitled to survivor benefits. Accordingly, we affirm the district court's judgment for Gitter. Because we conclude that Gitter is entitled to prejudgment and post-judgment interest under NRS 17.130, however, we vacate the portion of the district court's judgment awarding interest under NRS 99.040(1)(a), and remand with instructions

to award interest under NRS 17.130. In concluding that up to $1,500 in fees is permitted for expert consultants who do not testify, we also affirm the district court's award of costs under NRS 18.005(5). Finally, we conclude that the attorney fee awards were unwarranted under NRS 7.085(1) and 18.010(2)(b). Therefore, we reverse the order awarding fees against PERS, and we grant the petition and direct the clerk of this court to issue a writ of mandamus instructing the district court to vacate its order awarding attorney fees against petitioners.

_____, J.
Gibbons

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A